Filed 1/27/23  In re Camille A. CA2/1

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION ONE

| | |
|---|---|
| In re CAMILLE A., a Person Coming Under the Juvenile Court Law. | B316542 (Los Angeles County Super. Ct. No. 21CCJP02310) |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES, Plaintiff and Respondent, v. LARRY D., Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County, Terry T. Truong, Judge Pro Tempore.  Affirmed with directions.

Carol A. Koenig, under appointment by the Court of Appeal, for Defendant and Appellant.

Dawyn R. Harrison, Acting County Counsel, Kim Nemoy, Assistant County Counsel, Kelly Emling, Deputy County Counsel, for Plaintiff and Respondent.

_____

In this dependency case (Welf. & Inst. Code, § 300 et seq.),[1] Larry D., the presumed father, appeals from the juvenile court's disposition order removing then-15-year-old Camille A. from his custody. At the time DCFS filed these proceedings, Larry, who is not Camille's biological father, had sole legal and physical custody of her under a final custody order issued in a prior dependency proceeding. Larry contends we must remand the matter for compliance with the Indian Child Welfare Act (25 U.S.C. § 1901 et seq.; (ICWA)) and California law implementing ICWA. He argues (1) the Los Angeles County Department of Children and Family Services (DCFS) failed to comply with its duty to inquire under section 224.2 whether Camille is or may be an Indian child within the meaning of ICWA, (2) DCFS sent defective ICWA notices to the tribes, and (3) the juvenile court erred in finding ICWA does not apply. For the reasons explained below, we conclude there was prejudicial inquiry error, including DCFS's failure to interview Camille's biological father regarding Camille's possible Indian status. We remand the matter to the juvenile court with directions for DCFS and the court to comply with the inquiry provisions of California law implementing ICWA, as specified below.

_____

[1] Undesignated statutory references are to the Welfare and Institutions Code.

2

# BACKGROUND[2]

## I. The Family

Camille is the biological daughter of Callie A. (Mother) and Peter C., who are not parties to this appeal. When Camille was born in 2006, Mother was in a relationship with appellant Larry D. and lived with him. The following year, Mother and Larry had a daughter, A.D. Mother and Larry did not marry. In or around late 2008, they ended their relationship and informally agreed to share custody of Camille and A.D.

## II. Prior Dependency Proceedings[3]

In 2010, DCFS filed a dependency petition under section 300 involving Camille and her half siblings (Mother's children), alleging Camille's three-month-old half sibling was injured and Mother's explanation was inconsistent with the infant's injuries. The petition also alleged Peter, Camille's biological father, failed to provide Camille with the necessities of life and his whereabouts were unknown. The juvenile court sustained these and other allegations in the petition. The petition did not include any allegations against Larry. ~(1CT 68-69)~ Apparently, Mother

---

[2] We include here only the facts germane to the issues on appeal: DCFS's and the juvenile court's compliance with ICWA and California law implementing ICWA.

[3] Our account of the prior dependency proceedings is taken primarily from DCFS's summaries of those proceedings set forth in its Detention and Jurisdiction/Disposition reports in the present action. The records from the prior dependency proceedings are not included in the record before us, with the exception of a June 29, 2012 minute order identifying Peter as Camille's biological father, and a portion of the October 25, 2012 final custody order referenced below.

and Larry were still sharing custody of Camille on an informal basis when these (prior) dependency proceedings commenced. Camille was not placed with Larry at the outset of the proceedings; it is not clear from the record where she was placed initially.

In these same prior dependency proceedings, the juvenile court declined to order reunification services for Mother. DCFS located Peter, and he participated in the proceedings, having Camille placed with him at one point. In 2011, the court terminated Camille's placement with Peter, ordering her suitably placed by DCFS, and later the court terminated Peter's reunification services. Sometime in 2012, the court placed Camille with Larry, where her sister A.D. continued to live. The court deemed Larry to be Camille's de facto parent and later found him to be her presumed father and ordered family maintenance services for him and Camille. On October 24, 2012, the court terminated dependency jurisdiction over Camille and awarded Larry sole legal and physical custody of her, with supervised visitation for Mother.[4] The court issued the final custody order the following day, on October 25, 2012.[5]

The record in this appeal does not include any ICWA finding made in a prior dependency proceeding.

---

[4] The juvenile court apparently did not terminate Peter's parental rights, but it did not award him custody of or visitation with Camille.

[5] We do not discuss herein other prior dependency petitions and proceedings involving Camille's half siblings (Mother's children) because those proceedings are not relevant to the present appeal.

4

### III. Present Dependency Proceedings and ICWA Inquiry
#### A. Detention

As stated in DCFS's Detention Report in the present action, in May 2021, Larry contacted DCFS and reported that then-14-year-old Camille had been running away from home and not following rules, and he had concerns about "keeping her safe." He informed DCFS that he "no longer wanted custody" of her and she was "no longer welcome in his home." Camille denied running away, telling DCFS that Larry "had been putting her out" of the home. She denied feeling unsafe with him but reported being "fearful of his unwarranted anger toward her." Camille described incidents of physical discipline by Larry (pushing, striking, holding her by her neck). Camille informed a social worker that she had not seen Mother since she was nine or 10 years old (a period of around four or five years). DCFS detained Camille and placed her in a foster home. DCFS had no concerns about 13-year-old A.D.'s safety (Camille's sister), and she remained in Larry's custody.

Although DCFS was aware that Larry is not Camille's biological father, DCFS inquired about Larry's possible Native American ancestry. Both Larry and DCFS agree that Larry's ancestry is irrelevant to the ICWA issues he raises in this appeal because he is not Camille's biological father. Thus, we will not set forth herein the results of DCFS's inquiry into Larry's ancestry, although we will note below each time DCFS and the juvenile court made such an inquiry regarding his ancestry (and did not make a similar inquiry of Camille's biological father, Peter).

DCFS stated in the Detention Report that Mother's whereabouts were unknown. Larry told the social worker that he

5

and Camille were in contact with Camille's maternal grandmother, C.W., and Camille had gone to Texas to visit her during the COVID-19 pandemic. On May 14, 2021, a social worker contacted the maternal grandmother and interviewed her regarding the conflict between Larry and Camille. The maternal grandmother told the social worker she had not seen Mother in around five years. There is no indication in the Detention Report that the social worker asked the maternal grandmother about Camille's possible Indian status during this May 14 interview.

DCFS stated in the Detention Report: "[ICWA] does not apply. [The social worker] was unable to verify its validity."

On May 17, 2021, DCFS filed a dependency petition under section 300, alleging, among other things, that Larry physically abused Camille by pushing her, striking her body, breaking her glasses, and holding her by the neck against a closet (count a-2). DCFS attached to the petition form ICWA-010(A), the Indian Child Inquiry Attachment. DCFS checked boxes indicating a social worker interviewed Larry regarding Camille's possible Indian status, and such inquiry "gave [the social worker] no reason to believe the child is or may be an Indian child."

Larry appeared at the May 20, 2021 detention hearing, and the juvenile court found him to be Camille's presumed father. His counsel filed on his behalf form ICWA-020, the Parental Notification of Indian Status, indicating one or more of his lineal ancestors was a member of a Cherokee tribe. The court ordered DCFS to investigate Larry's claim of Native American ancestry and update the court in a report. The court asked Larry if Mother had any Native American ancestry as far as he knew, and he said no. The court stated in its minute order from the detention hearing: "Based on [Larry]'s statements, the Court

6

does have a reason to know that this is an Indian Child, as defined under ICWA." The court did not mention Camille's biological father, Peter.

Larry submitted on Camille's detention from him, and the juvenile court made detention findings. Larry's counsel informed the court that Larry wanted "to build[] his relationship" with Camille through conjoint counseling and regular visitation. Larry agreed that his visits be monitored. Camille remained placed in a foster home.

## B. Jurisdiction/disposition

### 1. Jurisdiction/disposition report and first set of ICWA notices

As stated in DCFS's Jurisdiction/Disposition Report, on June 3, 2021, a dependency investigator/social worker (investigator) interviewed Camille's maternal grandmother regarding Camille's possible Indian status. The report states: "[The maternal grandmother] reported her paternal side of the family 'has full Indian,' from possibly Apache and Cherokee tribes. However, the maternal grandmother reported she and her family have made efforts to confirm their Indian Ancestry and have not been successful. The maternal grandmother reported her great grandmother [name and date of birth given] and great, great grandmother [name and date of birth given] both were of Indian Ancestry." The maternal grandmother provided the name of and telephone number for Camille's maternal aunt, T.S., and represented to the investigator that the maternal aunt had expressed interest in having Camille placed with her. There is no indication in the record that DCFS contacted the maternal aunt or made an inquiry of her regarding Camille's possible Indian

7

status. The investigator also asked Larry for further information about his Native American ancestry, which he provided.

Based on information from Larry and the maternal grandmother, on June 15, 2021, DCFS sent notice of the adjudication hearing (form ICWA-030, Notice of Child Custody Proceeding for Indian Child) by certified mail, with return receipt requested, to the Bureau of Indian Affairs (BIA), the Secretary of the Interior, and Cherokee and Apache tribes. In the space on page three of the form for identifying the child's biological father, DCFS listed Larry D. and provided his address, date of birth, and his family's potential tribal affiliations, although he is not Camille's biological father. In a space on page 10 of the form for providing "additional information on child," DCFS checked boxes stating "[b]iological birth father has acknowledged parentage" and "[t]here has been a judicial declaration of parentage." Thereunder, DCFS checked "unknown" next to an inquiry regarding "[o]ther alleged father." Underneath that, DCFS typed "Peter C[.]," without indicating that Peter is Camille's biological father or providing any other identifying information about him (e.g., date of birth or address) or his relationship with Camille. The form identifies Camille's maternal grandmother, listing her maiden surname only, although the record shows DCFS was aware of her current surname, and the form asks for both names. DCFS also included on the form the name of and date/place of birth for Camille's maternal great-grandfather.[6]

---

[6] We do not set forth herein the information listed in the ICWA form regarding Larry's ancestry, as it is not germane to the issues on appeal, as we explained above.

In a declaration form attached to the ICWA notices, behind the proof of service, the investigator listed numerous items of information she had learned during her ICWA inquiry. Therein, she stated Larry told her that he is Camille's presumed father but not her biological father. The investigator did not reference Peter in the declaration or state that he is Camille's biological father. The investigator also listed in her declaration the names and dates of birth/death of the maternal grandmother's great-grandmother and great-great-grandmother and their potential tribal affiliations, but she did explain their relation to Camille (or the maternal grandmother). DCFS did not include the names and birth dates of these relatives in the spaces provided on the ICWA-030 form for "[o]ther relative information."

DCFS attached to the Jurisdiction/Disposition Report return receipts it received from the BIA and Cherokee and Apache tribes. DCFS also attached two letters it received from Apache tribes, stating Camille is not eligible for enrollment based on the information DCFS provided in the ICWA notice.

DCFS stated in the Jurisdiction/Disposition Report that Peter was then incarcerated in a jail in Los Angeles on an unspecified felony charge. DCFS had not interviewed him but served him with notice of the adjudication hearing at the jail, by certified mail, and received a return receipt. Camille's foster mother told the investigator that Camille "want[ed] to establish a relationship with her biological father," Peter.

On July 8, 2021, the date scheduled for the adjudication hearing, the juvenile court informed the parties that it was continuing the adjudication because DCFS had "not provided proper ICWA notice in this case." The court ordered DCFS "to properly notice the tribe with all available information on

9

[Larry]'s family" (although Larry is not biologically related to Camille) and provide a supplemental report "to include the new updated ICWA notices." Camille's maternal grandmother was present at the hearing by telephone. The court asked her if she had information about Mother's whereabouts, and she said no. The court also asked her: "As far as you know, do you have any Native American Indian heritage or does the daughter's father's family have any Native American Indian heritage?" The maternal grandmother responded: "To my knowledge there is Native American Indian heritage. I just don't know what it is. I do have a family tree now." The court stated it did not have a reason to know that ICWA applies as to Mother. Addressing the maternal grandmother, the court stated, "I would ask that if you do get additional information with regards to any American Indian heritage in your family, I do need for you to provide [it] to the social worker." There is no indication in the record that anyone asked the maternal grandmother to provide to the social worker the family tree she referenced during the hearing.

### 2. Second set of ICWA notices

On August 6, 2021, DCFS filed an Addendum Report, which included updated ICWA information. DCFS reported that the investigator interviewed Larry again about Camille's possible Indian status. DCFS also reported that it had used outdated contact information for some of the tribes. Accordingly, on August 4, 2021, DCFS sent new ICWA notices (form ICWA-030) by certified mail, with return receipt requested, to the BIA, the Secretary of the Interior and the Cherokee and Apache tribes.

This second set of ICWA notices, like the first, listed Larry's information in the spaces reserved for information about Camille's biological father and included Peter's name in the

10

additional information section without any context regarding his relation to Camille. The notices listed the maternal grandmother's maiden surname, but not her current surname, as well as the name of and date/place of birth for Camille's maternal great-grandfather. The spaces on the ICWA form for listing "[o]ther relative information" were left blank, notwithstanding the information the maternal grandmother provided about her ancestors. And the investigator's declaration, again attached behind the proof of service, listed the same information we summarized above in reference to the first set of ICWA notices.

DCFS attached to the Addendum Report return receipts it received from the BIA, the Secretary of the Interior, and Cherokee and Apache tribes. DCFS also attached five letters it received from Apache tribes, stating Camille is not eligible for enrollment based on the information DCFS provided in the ICWA notice. Three of those letters list Larry as Camille's father (although he is not her biological father). None of the letters references Peter.

In the Addendum Report, DCFS recommended monitored visitation for Peter to commence after he contacted DCFS. The record does not indicate DCFS served him with notice of the continued adjudication hearing.

On August 9, 2021, DCFS filed a first amended dependency petition, adding an allegation under section 300, subdivisions (b) and (g) that Mother failed to provide Camille with the necessities of life and her whereabouts were unknown (counts b-5 & g-2). DCFS attached to the amended petition form ICWA-010(A), the Indian Child Inquiry Attachment. DCFS checked boxes indicating the investigator interviewed Larry and the maternal grandmother regarding Camille's possible Indian status, and

11

such inquiry "gave [the investigator] reason to believe the child is or may be an Indian child," so the investigator "contacted the tribe(s) that the child may be affiliated with and worked with them to establish whether the child is a member or eligible for membership in the tribe(s)."

On August 19, 2021, the date scheduled for the adjudication hearing, the juvenile court again continued the adjudication, stating: "With regards to the adjudication, I need [DCFS] to provide the court with updated ICWA notices if those were sent out.[7] The issue was whether -- was that the notices didn't -- previous notices did not include paternal great grandmother [Larry's relative]. There's also the issue of possible biological father Peter C[.] who is currently in state prison." The court ordered DCFS (1) to provide an update on ICWA notices in the next report, (2) to make contact with Peter, discuss the case with him, and document the contact in the next report, and (3) to arrange for Peter's appearance at the next hearing.

On September 16, 2021, DCFS filed a second Addendum Report, attaching additional return receipts it had received from Cherokee and Apache tribes. DCFS also attached additional letters it had received from Apache tribes, stating Camille is not eligible for membership based on the information DCFS provided in the ICWA notice. DCFS detailed the efforts it had made to secure Peter's appearance at the next hearing. The investigator

---

[7] As set forth above, DCFS sent a second set of ICWA notices on August 4, 2021 and attached them to the Addendum Report it filed with the court on August 6, 2021, but no one mentioned this at the August 19, 2021 hearing.

did not speak with Peter but served him with notice of the hearing at the prison where he was incarcerated.

### 3. Adjudication and disposition hearings

Peter was not transported to court for the next hearing, held on September 29, 2021. The juvenile court proceeded with adjudication. Larry appeared, and the maternal grandmother participated by telephone. After hearing argument from counsel for Larry, Camille, and DCFS, the court sustained count a-2 (physical abuse) against Larry and count g-2 (no provision for support) against Mother and dismissed the other counts. There were no counts alleged against Peter.

The juvenile court continued the matter for disposition, explaining: "As to disposition, [Peter]'s situation is unfortunately preventing me from proceeding to disposition. I would like for [DCFS] to continue its attempt to reach him. And what I'm looking for really is to see whether [Peter] wants to be presumed father. And if he does, whether he has any sort of a plan for Camille's placement given that he is currently incarcerated." The court further stated: "As far as the ICWA issue, time has expired for the tribes to respond back to the court. At this time I can't find that ICWA does not apply in this case." The court did not elaborate.

DCFS served Peter with notice of the disposition hearing at the prison where he was incarcerated. As stated in DCFS's October 26, 2021 Last Minute Information for the Court, on October 22, 2021, prison staff contacted the investigator and stated Peter waived his right to appear at the disposition hearing. Staff sent DCFS a form signed by Peter stating he did not want to be transported to court for the disposition hearing,

13

but he wanted the juvenile court to appoint an attorney to represent him at the hearing.

Larry appeared at the October 29, 2021 disposition hearing, and the maternal grandmother participated by telephone. The juvenile court found Peter had waived his appearance. At the outset of the hearing, the juvenile court stated: "Counsel, I am inclined to make a no ICWA finding in this case. Does anyone want to be heard with regards to ICWA? All right. [¶] Then the court finds that ICWA does not apply in this case." The court's minute order states: "The Court does not have a reason to know that this is an Indian child, as defined under ICWA, and does not order notice to any tribe or the BIA. Parents are to keep [DCFS], their Attorney and the Court aware of new information relating to possible ICWA status." Peter was never interviewed in this case regarding Camille's possible Indian status. The court did not appoint counsel to represent Peter at the disposition hearing.

After hearing argument from counsel for Larry, Camille, and DCFS, the juvenile court declared Camille a dependent of the court, removed her from Larry, and ordered her suitably placed under DCFS's supervision. The court ordered reunification services and monitored visitation for Larry; and monitored visitation for Mother and Peter, to commence after they contacted DCFS.

## DISCUSSION

### I. Applicable Law

Under ICWA, an "Indian child" is an unmarried person under 18 years of age who is (1) a member of a federally recognized Indian tribe or (2) is eligible for membership in a federally recognized tribe and is the biological child of a member

14

of a federally recognized tribe.  (25 U.S.C. § 1903(4) & (8); see § 224.1, subd. (a) [adopting federal definitions].)

DCFS and the juvenile court "have an affirmative and continuing duty to inquire whether a child" involved in dependency proceedings "is or may be an Indian child."  (§ 224.2, subd. (a).)  DCFS's " 'initial duty of inquiry includes "asking the child, parents, legal guardian, Indian custodian, extended family members, others who have an interest in the child, and the party reporting child abuse or neglect, whether the child is, or may be, an Indian child and where the child, the parents, or Indian custodian is domiciled." ' "  (*In re Darian R.* (2022) 75 Cal.App.5th 502, 507 (*Darian R.*), italics omitted.)  Under ICWA, the term " 'extended family member' " is "defined by the law or custom of the Indian child's tribe or, in the absence of such law or custom, shall be a person who has reached the age of eighteen and who is the Indian child's grandparent, aunt or uncle, brother or sister, brother-in-law or sister-in-law, niece or nephew, first or second cousin or stepparent."  (25 U.S.C. § 1903(2).)

"At the first appearance in court of each party, the court shall ask each participant present in the hearing whether the participant knows or has reason to know that the child is an Indian child" (§ 224.2, subd. (c)) and order the parents to complete form ICWA-020 (Parental Notification of Indian Status).  (Cal. Rules of Court, rule 5.481(a)(2)(C).)

If the juvenile court or social worker "has reason to believe that an Indian child is involved in a proceeding," based on the initial inquiry described above, the court or social worker "shall make further inquiry regarding the possible Indian status of the child," including, but not limited to:  (1) interviewing the parents and extended family members; (2) contacting the BIA and the

15

State Department of Social Services for assistance in identifying and contacting tribes; and (3) contacting tribes and others "that may reasonably be expected to have information regarding the child's membership status or eligibility." (§ 224.2, subd. (e).) There is reason to believe a child is an Indian child if there is information suggesting that either the child or the parent is a member or may be eligible for membership in an Indian tribe. (§ 224.2, subd. (e)(1).) "Information suggesting membership or eligibility for membership includes, but is not limited to, information that indicates, but does not establish, the existence of one or more of the grounds for reason to know enumerated in paragraphs (1) to (6), inclusive, of subdivision (d)," which we set forth below. (*Ibid.*)

The purpose of interviewing extended family members as part of further inquiry is "to gather the information required in paragraph (5) of subdivision (a) of Section 224.3." (§ 224.2, subd. (e)(2)(A).) Such information includes: "All names known of the Indian child's biological parents, grandparents, and great-grandparents, or Indian custodians, including maiden, married, and former names or aliases, as well as their current and former addresses, birth dates, places of birth and death, tribal enrollment information of other direct lineal ancestors of the child, and any other identifying information, if known." (§ 224.3, subd. (a)(5)(C).)

ICWA notice is required if DCFS or the juvenile court knows or has reason to know a child is an Indian child under any of the circumstances described in section 224.2, subdivision (d). (25 U.S.C. § 1912(a); § 224.3, subd. (a); Cal. Rules of Court, rule 5.481(b)(1).) Under subdivision (d), "There is reason to know a

child involved in a proceeding is an Indian child under any of the following circumstances:

"(1) A person having an interest in the child, including the child, an officer of the court, a tribe, an Indian organization, a public or private agency, or a member of the child's extended family informs the court that the child is an Indian child.

"(2) The residence or domicile of the child, the child's parents, or Indian custodian is on a reservation or in an Alaska Native village.

"(3) Any participant in the proceeding, officer of the court, Indian tribe, Indian organization, or agency informs the court that it has discovered information indicating that the child is an Indian child.

"(4) The child who is the subject of the proceeding gives the court reason to know that the child is an Indian child.

"(5) The court is informed that the child is or has been a ward of a tribal court.

"(6) The court is informed that either parent or the child possess an identification card indicating membership or citizenship in an Indian tribe."  (§ 224.2, subd. (d).)

We generally review ICWA findings for substantial evidence, but where, as here, the material facts are undisputed, " ' "we review independently whether ICWA requirements have been satisfied." ' "  (*In re J.K.* (2022) 83 Cal.App.5th 498, 504.)

## II.    Analysis

Larry contends DCFS failed to comply with its initial duty to inquire whether Camille is or may be an Indian child within the meaning of ICWA. Based on the record, DCFS did not contact Camille's biological father Peter or Camille's maternal aunt T.S. to conduct an ICWA inquiry, although DCFS had

17

contact information for both. As set forth above, under California law implementing ICWA, DCFS's initial duty of inquiry includes asking a biological parent and a maternal aunt whether the child is or may be an Indian child. (See *Darian R., supra*, 75 Cal.App.5th at p. 507, citing § 224.2, subd. (b).) The juvenile court made its finding that ICWA does not apply without the benefit of such inquiries. The failure to inquire of Peter and the maternal aunt regarding Camille's ancestry was error.

An error in conducting the initial ICWA inquiry is one of state law and requires reversal only on a showing of prejudice. (*In re S.S.* (2022) 75 Cal.App.5th 575, 582 (*S.S.*).) In assessing whether remand is required for a failure to comply with the duty of inquiry under state law implementing ICWA, this division has applied the definition of prejudice set forth in *In re Benjamin M.* (2021) 70 Cal.App.5th 735 (*Benjamin M.*). (*Darian R., supra*, 75 Cal.App.5th at p. 509; *S.S.*, at p. 582.) Under the *Benjamin M.* standard, we will remand the matter only "where the record indicates that there was readily obtainable information that was likely to bear meaningfully upon whether the child is an Indian child." (*Benjamin M.*, at p. 744.)

Peter was readily available to DCFS, as DCFS had served him with notice of hearings at his place of incarceration. An inquiry of Peter was likely to bear meaningfully upon whether Camille is an Indian child because Peter is her biological father and DCFS did not make contact with any relative on Peter's side of the family. There is nothing in the record suggesting an inquiry of Peter would not be meaningful in elucidating whether Camille is an Indian child. We disagree with DCFS's claim in the respondent's brief that Camille's maternal grandmother "would know if biological father [Peter] had Native American ancestry."

18

The record does not support DCFS's speculation. Accordingly, this initial inquiry error was prejudicial under the *Benjamin M.* standard. (Cf. *Darian R., supra,* 75 Cal.App.5th at p. 510 [failure to make an inquiry of a maternal aunt and the maternal grandfather was not prejudicial where both parents denied Indian ancestry, the mother was under a court order to provide information relevant to ICWA, there was no evidence mother was estranged from her family, and a prior court order in an earlier dependency case involving the same biologic parents found ICWA inapplicable]; *S.S., supra,* 75 Cal.App.5th at pp. 581, 582 [failure to make an inquiry of the maternal grandmother was not prejudicial because the "maternal grandmother, [the] [m]other's counsel, and [the child's] counsel, each of whom requested that the court consider placing [the child] with the maternal grandmother, would . . . have a strong incentive to bring to the court's attention any facts that suggest that [the child] is an Indian child. Their failure to do so implies that the maternal grandmother is unaware of such facts"].)

We remand the matter for an inquiry of Peter regarding Camille's potential Native American ancestry. If Peter identifies other extended family members, whom DCFS is able to contact, DCFS must also inquire of them regarding potential Native American ancestry.

We also order DCFS to conduct an inquiry of the maternal aunt upon remand. In the respondent's brief, DCFS does not address the initial inquiry error in failing to interview the maternal aunt. In light of the maternal grandmother's statements regarding her family's Native American ancestry, and her difficulty in accessing complete information about that ancestry, we cannot conclude the failure to interview the

19

maternal aunt regarding Camille's possible Indian status was harmless.

Larry also contends DCFS should have collected from the maternal grandmother the family tree she referenced at the July 8, 2021 hearing, before DCFS sent the first set of ICWA notices on July 15, 2021. DCFS does not respond to this contention in the respondent's brief. The record indicates that neither DCFS nor the juvenile court reviewed the family tree or asked the maternal grandmother to turn over a copy of it. As part of its duty of inquiry upon remand, we order DCFS to request a copy of the family tree from the maternal grandmother and review it for additional information regarding Camille's potential Native American ancestry, to the extent the maternal grandmother provides the family tree.

Larry further contends that both sets of ICWA notices DCFS sent were defective in that, among other things, the notices (1) listed Larry's information in the spaces relating to the biological father, (2) did not identify Peter as Camille's biological father, (3) did not include the maternal grandmother's current surname, (4) listed information regarding lineal relatives the maternal grandmother identified in a declaration attached behind the proof of service, rather than in the spaces provided in the form for listing information about other relatives, and (5) were not properly sent to certain of the Cherokee and Apache tribes.

We need not address Larry's contention about the ICWA notices because, at this juncture, there is no reason to know Camille is an Indian child under any of the circumstances set forth in section 224.2, subdivision (d), so notice to the tribes of the dependency proceedings was not required (although DCFS sent

20

notice). (§ 224.3, subd. (a).) Larry does not cite to any circumstance enumerated in the statute that he believes demonstrates a reason to know Camille is an Indian child. There is no information in the record indicating Camille is a member of a federally recognized Indian tribe or is eligible for membership in a federally recognized tribe and is the biological child of a member of a federally recognized tribe, the definition of an "Indian child." (25 U.S.C. § 1903(4) & (8); see § 224.1, subd. (a) [adopting federal definitions].) If DCFS's ICWA inquiry upon remand, as outlined in this opinion, reveals a reason to know Camille is an Indian child, DCFS must send notices that comply with ICWA and California law implementing ICWA.

## DISPOSITION

The disposition order is affirmed. The matter is remanded to the juvenile court for DCFS and the court to comply with the inquiry provisions of California law implementing ICWA, consistent with this opinion. The juvenile court is directed to order DCFS to file a report with the juvenile court within 30 days of our remittitur containing the information required by California Rules of Court, rule 5.481(a)(5), including a description of all inquiries of the biological father, the maternal aunt, the maternal grandmother, and any other available extended family members. Thereafter, the juvenile court shall conduct further

21

proceedings in accordance with ICWA and related California law, if applicable.

NOT TO BE PUBLISHED


CHANEY, J.

We concur:


BENDIX, Acting P. J.


WEINGART, J.